Generation II Orthotics Incorporated against Medical Technology. Mr. Culligan. Good morning, Your Honors. May it please the Court, I intend to focus my argument on fundamental claim construction and obvious miseries that are the principal reasons why this Court should reverse the District Court's decision, vacate the final judgment, and vacate the District Court's injunction. The overarching claim construction issue at the center of this appeal involves a direct challenge to this Court's claim construction jurisprudence. What do we care? I mean, you know, it may be that the District Court used the wrong approach, but we review the claim construction de novo. The question is, is there a claim construction error here? We can determine that ourselves. And the question then becomes, of the five claim constructions or whatever it is, which one was error and why? The fundamental problem here, Your Honor, is that there was no claim construction here, that the District Court construed five material disputed claim limitations by simply telling the jury that they ought to be afforded their ordinary meanings without telling the jury what that ordinary meaning supposedly is. The question is, was there an objection? What did you propose instead that the jury be instructed, and was what the judge instructed the jury wrong, and was what you requested correct? I mean, that's the way it works. Yes, sir. So what's your best argument as to which one the judge made a mistake about? Well, with respect to all five of these limitations, the judge gave no instruction whatsoever to the jury other than to apply the common ordinary meaning. Okay, so did you object? Yes, we did, Your Honor. Okay, and did you propose an alternative? Yes, we did, Your Honor. Okay, and so give us an example of why your alternative was correct and why the judge was wrong. Okay. With respect to the claim limitation adjustable joint, which is present in all of the claims in suit, the District Court declined to define adjustable joint, and also declined to define adjusting the inclination to provide the required bracing at the required inclination. But did the parties argue to the jury what the claims meant and whether or not the clause was infringed by the accused structure? There was evidence. Both parties deduced evidence with respect to the question of competence. Let's use adjustable joint as an example. Yes. For instance, did the parties argue whether there was or wasn't an adjustable joint in the accused device? Yes. The parties argued about this, Your Honor, with respect to obviousness, whether there was an adjustable joint in a German prior art reference called Grabowski. I'm talking about infringement. With respect to infringement, there was a summary judgment motion below, and the District Court took away the question of infringement with respect to most of these claims, these claim limitations, and then instructed the jury that if they were to find the patent valid, then they should take it as given that it's infringed. The problem with that, Your Honors, is that it's impossible—it's very difficult for you to review on appeal whether the summary judgment motion below was correct because the court did not construe the claims so that you can determine whether— What do you mean by construing the claim? When you're dealing with obviousness, you don't need a prologue of claim construction. You look at the references and what they provide, and you look at what the patentee is showing, and you compare them. You don't need an extra intervening step of formality of construction, do you? Your Honor, you're left without any guidance at all about what the District Court did, whether his analysis on the summary judgment motion was correct, because there is no definition provided for these five claims whatsoever. It's simply ordinary meaning. We have the whole specification telling us what the invention is and what those terms refer to. I agree, Your Honor. You do. If you review the evidence, I think that you will see that the claim should have been held as obvious. What I'm trying to focus on is you're telling us that there were procedural errors, and I'd like very much to hear where the substantive errors are. Obviousness, too, is a question of law. Yes, Your Honor. To determine whether the prior art references either did or did not meet a limitation, the jury was entitled to some help from the court. For example, there was a claim term called supporting the need, and support. The instruction given to the jury was, give that term its common, ordinary meaning. And even... And what did you propose for supporting the need? What did who propose was common, ordinary meaning? Well, you say that the District Court was wrong, that the common, ordinary meaning doesn't apply to supporting the need. Well, Your Honor, the problem here was whether or not the judge was right, the District Court was right about whether the plain, common, ordinary meaning ought to apply. You didn't tell the jury what that was. But what seems confusing, and maybe that's why all of this seems a bit odd, is that... I just don't understand. Is your argument... Your argument is not that the judge rejected your proposed claim instructions, correct? Well, they're two separate arguments, Your Honor, and the answer is yes to that, too. I mean, separate, wholly separate and apart from our argument that the judge failed to construe the claims for the jury and provide some meaning to them, just said plain, ordinary meaning, which leaves them... But wait, let's take one step at a time. Are you coming up here, are you requesting, are you seeking a reversal of the claim construction by the judge in favor of your claim construction? Are you arguing that she erred by not adopting your claim construction? Yes, Your Honor, with respect to all five claims. Okay, so that's your argument. That's correct. Okay, so it's not just she said ordinary meaning, she should have given more meat to that. No. It's that she rejected your claim construction. That's true, Your Honor. So what was your claim construction on supporting the need? Our claim construction was, let's see, for supporting the knee. Bledsoe's proposed construction was adjustable, I'm sorry, support, that's what you were looking for. Bledsoe's proposed construction was it requires that the brace prevent the knee from moving in either the medial or the lateral direction. It also requires that the knee brace only provide a reactive force to keep the knee from moving out of the desired configuration and not proactively force the knee into the desired configuration. Okay, so your opponent argues that's an incorrect construction because the whole point of this is not to prevent the knee from remaining in the exact position it was in, but to supply support on one side of the knee to avoid the bone-on-bone contact. So why isn't that correct? Why isn't your interpretation of the claim that you urged the judge to give to the jury incorrect? Actually, Your Honor, the construction urged by our adversary was no construction at all. No, no, but under by-index, you've got to show that the construction that you proposed that you asked the judge to instruct the jury was a correct instruction. That's correct, Your Honor. All right, so why is your proposed construction correct? Why? Because ours was supported by intrinsic evidence that we've cited in our brief. Well, what's the support for it? I mean, it looks as though preventing the knee from moving, keeping it stable, would defeat the purpose of the invention here. Your construction of supporting the knee meant that the knee had to remain rigid, right? No, that's not correct. Not correct? No. The joint is hinged so that one can bend the knee. No, no, I understand that, but we're not talking about bending the knee. We're talking about side-to-side movement. Right. And insofar as side-to-side movement is concerned, your construction said it had to prevent it from moving from either one side or the other, right? Right, Your Honor. That would defeat the purpose of the invention, wouldn't it? No, I don't believe it would defeat the purpose of the invention, Your Honor. And that was the construction admitted by the inventor during reexamination of the 169 patent, in which he asserted that the arms of the claimed brace were constructed of rigid material to resist lateral force in both directions. Also, if you just look at the plain and ordinary meaning of support or supporter, it's an apparatus to hold in place a dependent or pendulous part, collapsed organ, or joint. Separate and apart, Your Honor, from the question whether the court was right in deciding that these claims, limitations ought to be given their plain, ordinary meaning, the fundamental problem here is that he then did not tell that fundamental meaning to the jurors. But I thought you had just agreed with us several minutes ago. I mean, I thought the issue here in this case was not whether or not the ordinary meaning was given any definition, but whether or not the judge erred in rejecting your claim construction. No, Your Honor, I'm making both arguments. I think that there's a fundamental error in not articulating for the jury what the plain and ordinary meaning is. But did you advocate a plain and ordinary meaning? I don't think what you just recited to Judge Dyke reflects necessarily a plain and ordinary meaning. No. I mean, are you saying that the judge erred in simply saying plain and ordinary meaning by not giving the plain and ordinary meaning, and that what you proposed was the plain and ordinary meaning? No, Your Honor. What I'm suggesting here is that the court erred by relying on a Texas digital approach that's been discredited by this court. Why do we care? I mean, the issue's before us. We've got to decide the claim construction de novo. If the district court got it wrong on the merits of the claim construction, we can fix it. So tell us why your claim construction was right. You've got to show under Bidex that what you asked for was a correct construction of the claim. Well, Your Honor, we can go through each one of the five claim limitations here, but essentially what we'd be doing, and it shows the evil of what happened below, and that is that we are now conducting a Markman hearing in the Court of Appeals for the Federal Circuit. That's what we do, for better or for worse. These are de novo reviews, and the idea is to do our best once and for all through the judicial process to construe the patent correctly. And I really am interested in this supporting the knee construction and why you can't ask the trial judge to take every single word in a claim and repeat it and say this is what everybody who speaks the language knows, supporting the knee. It means if you're looking for something special tied to this particular invention of supporting the knee, that's a genuine possibility, but tell us what it is. Two answers to that, Your Honor. This isn't the first time that a case has come to this court in which a court failed to provide an express construction of disputed material claim terms. In the AFG case, this court remanded and vacated twice, and you ruled that it's critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions if the case goes to trial, and because it's also the necessary foundation of meaningful appellate review. The failure to construe these claims and give meaning to, let's say, supporting the knee, when it came to trial, Gen 2's own expert testified that, quote, I think the term support the knee is it's a little vague and it depends on the context. Now, if Gen 2's own expert thought the term was vague and dependent on the context, how could the jury be expected to deal with it? We're not addressing why your construction was correct. I mean, you've got to show us why your construction was a correct construction, because if you offered a long jury instruction to the district judge, the district judge could reject it. You have to show us that what you offered to the district judge was correct. What we offered to the district judge was the intrinsic evidence that supported the claim constructions that we proposed, and we did that for all five of these with respect to relative to the pivotal joint. It was disputed and it was a material claim. It's present in all of the claims in suit. The district court said I declined to define relative to, and in the jury instruction, he said it's a phrase of general reference, give it some common meaning. Our proposed construction, the controlled inclination is the angle between the brace arm and the pivotal joint, and it requires that each brace arm be adjustable with respect to the pivotal joint itself, and an adjustment that adjusts the angle between the two arms, which is how our brace works, is not relative to the pivotal joint. Okay. I think we understand the problem. I think we're out of time. We will save you some rebuttal time, Mr. Matthew Killigan. Thank you. Mr. Mathiewicz. Good morning, Your Honors. May it please the court. The district court, in fact, did follow a well-established marking methodology to arrive at the claim constructions for the six terms that have been addressed in the defendant's briefing. Did you propose clarifying constructions of the terms at issue and telling the district courts that these terms should have their plenary meeting? I mean, did you go beyond that in what you were advocating other than plain and ordinary meeting, period? We started with a definition saying that plain and ordinary meeting in this case was sufficient because these are words that are well understood by a person of ordinary skill in the art, and, frankly, these are all words that are well understood by a common lay person as well. Adjustable joint? Adjustable joint actually had been considered in the first appeal before this court, and there was a substantial amount of discussion, again, about what an adjustable joint means. The district court actually, in its rulings, held that an adjustable joint, the parties agree about what an adjustable joint is. What is important with adjustable joint in this case, and it comes into the obviousness play as well, is that you have a joint that you place in the arm, and the joint itself, the adjustable joint, has to allow for controlled inclination of the arms. And so adjustable joint, frankly, was never an issue at the trial because the parties agreed that the prior art had an adjustable joint, and the parties agreed that the bled-so devices also had an adjustable joint. So adjustable joint was not an issue, really, that it made any difference. The court is looking for harmful error. There could be no harmful error with respect to adjustable joint, the claim construction, because it was not disputed by the parties at the trial. With respect to other terms, the other terms... But on adjustable joint, they did ask for a different claim construction from the judge in connection with the jury instructions, didn't they? They asked for, with regard to the adjustable joint, they did not ask for a different claim construction as to what adjustable joint meant. They talked about the adjustment relative to the pivotal joint, and that's where the other issue arose. The adjustable joint was... Well, with the other claim terms, they were all discussed at great length in the Markman process. But they made objections to the district court's claim constructions in connection with the jury instructions at 99-49. They said, don't give this instruction, give our instruction instead. So they preserved the objection. The question is whether what they argued for was a correct instruction. And what they argued for was an adjustable joint is only in Claim 21 of the 169 patent, but the adjustable joint that they argued for required something that would have imported limitations from the specification into the claim, and that was rejected by the district court. And consequently, the district court... That went into the district court's decision to not ask for or to not give a separate meaning for adjustable joint. On the obviousness question, if you accept that we all agree that the problem to be solved is the problem with the adjustability of the trace arms, you've got these two pieces of prior art, and you put them together, and there you have the invention, correct? I disagree, Your Honor. That was the whole... Much of the trial resolved around the Grabowski and the Gressinger prior art patents. Yes, Grabowski had an adjustable joint in it, but the underlying factors, the court clearly gave the proper instruction with regard to obviousness, and the obviousness asking the jury to look at the underlying Graham factors. And those Graham factors were clearly... Well, most of them were disputed at the trial court. In particular, the jury was asked or was given substantial testimony with respect to the scope and content of the prior art and the differences between the indention and the prior art. Dr. Keaveney testified at length about the differences between the indention and Grabowski. For instance, Grabowski was shown to be a device that was meant in the 1920 time period to straighten a leg over its entire length. So what? So what? The question is whether there was a motivation to combine the adjustable feature of Grabowski with the other prior art here, and it's an obviousness analysis. The fact that Grabowski didn't include the other claim limitations doesn't prevent it from being considered for the obviousness analysis, does it? No, it does not. And the jury was instructed that the parties agreed that these were relevant prior art. However, what Dr. Keaveney and Mr. Taylor testified to, and actually Dr. Grude, the defendant's expert, also referred to, is the fact that there were such differences between the indention and the prior art that one would not be motivated to look to Grabowski and Gressinger and put that adjustable joint into the brace of the prior art unloader brace, which was Generation II's prior brace. But if you recognize, if you have given that you've got a problem of adjustability in the brace arm, then clearly beyond that it's absolutely obvious that you take these two pieces of prior art, put them together, and there you have the indention, correct? Once you've determined this is the problem I want to be solved, right? No, Your Honor. We disagree. And again, that was the issue presented to the jury, and the jury clearly found that there was no motivation here to combine because just simply taking, it's a classic hindsight problem, taking a piece from this prior art reference and filling it in over into the indention and trying to find the differences between the indention and the prior art. And that's exactly what the defendants tried to do with Grabowski and Gressinger, which the jury clearly rejected. The court, the district court clearly rejected as well on the JAMAL motions. And the prior art here, the unloader, which lacked this one feature of adjustability, the thing was bent, right? In order to adjust the prior art unloader brace, they had to send it back to the factory and bend it. Right, as opposed to adjusting it with the screws. As opposed to adjusting it with the screw. So the question is why wasn't it obvious to take this screw adjustment from Grabowski and apply it here? Well, it wasn't obvious because what Grabowski, and this is where we have to go back and look at the scope and content of the prior art and look at the differences. Because Grabowski, you have to think of the brace, the knee brace of the indention. It has to provide support to the knee so that it can open the joint. One would not look to Grabowski to find that. In Grabowski, all you find is a joint in the arms. You would not be motivated to do that, to take a joint from Grabowski and add it to the unloader, which requires that you be able to adjust it finely, be able to, and still withstand the tremendous forces that are necessary in order to open the knee. So there's simply no motivation to do that. Actually, Dr. Crude testified that the motivation behind Grabowski, he said too, was the problem of curved legs for children due to rickets. So there is no motivation, and that's what the jury found. And that's the starting point for this court's determination of obviousness, is to look at the findings, the underlying factual findings, which all were in favor of a finding that there was no motivation to combine any of this prior art. So given that, there was no, there's no error, and there is no obviousness. Recognizing that even though it is a legal question, you have to look at the underlying facts and the underlying findings, which are clearly in favor of Generation 2. If I could just go back and... Was the basic jury finding on motivation? There was no special interrogatory. There was no special interrogatory. It was wrapped into, do you find that there would be a... Is it what you're saying is that was the whole issue of the trial was the motivation question? Well, clearly it was a significant part of the trial. Was there a motivation to... No, but I mean on the obviousness question. Was it the sole issue as to whether there was a motivation? I think that would be a fair analysis because, well, was there motivation, and the motivation has to go to the scope and content of the prior art as well as the differences, and that's where much of the testimony came in was on those two issues. If I could briefly address the claim construction issue in my remaining time, as I indicated, there really was no disagreement in the trial court about when it came to analyzing infringement and obviousness about adjustable joint. With regard to supporting the need, which the court has questioned, the defendant's proposed definition for supporting the need was clearly rejected. It was rejected by the special master, who issued a 22-page claim construction proposal. It was rejected by the district court, which reviewed the special master's report and also held his own hearing. The basic argument they're making is that it had to support both sides of the knee, and you were saying it had to support one side of the knee or the other. Well, the patent itself clearly identifies... Just help me. Is my statement correct? Yes, that's right. They said that it should be treated like a cast, but the patent clearly is directed to an invention that is to replace a cast because a cast doesn't allow you to move your knee. The idea behind the invention originally was following a high tibial osteotomy in which the leg, a portion of the bone, is actually taken out. In the old days, you would have to put a cast on it, but the person could not walk with the cast on. And so the patent... Yeah, but that's not what they're arguing for. They're not arguing that it should be treated as a cast because obviously the knee has to bend. What they're saying is that both sides of the knee had to be supported, whereas you were arguing that only one side had to be supported. That's basically the dispute, isn't it? The dispute is that how the knee needs to be, and for lack of a better word, supported, which is why... But is my statement right or wrong? Yes. They said that essentially it had to be fixed on both sides, and we said it has to be supported on the injured side. On one side or the other. One side or the other, yes. And so that district court looked at the specification and it said, you know, this construction is wrong. What defendant would like this court to do is to establish a rule that even common words, every common word in a claim, would have to be construed. And what the district court did was basically say, look, there are terms here that just do not have to be construed. The court didn't abrogate its responsibility. I'm not sure that the district court shouldn't have construed supporting the knee to make clear that it was one side or the other. I mean, supporting the knee, it's not clear what that means in the context of this patent. But nobody asked the court to instruct the jury that it should be supported on one side and not the other, right? That's correct, Your Honor. And again, what the defendants are concerned with here or what the court needs to look at, is there harmful error? Was there a definition offered by Bledsoe which would have made a difference in the outcome of this case? And the answer is no, there was not. That's not true. They asked for a construction which would have changed the outcome of the case. Your argument is it was a wrong construction. Well, that's true, Your Honor. It was a wrong construction. Clearly, the special master found it wrong, the district court judge found it wrong, and I think the evidence supports the finding. Okay, thank you, Mr. Mathias. Mr. McColligan, you have your rebuttal time. Thank you, Your Honor. I'd like to address obviousness very briefly. I think that regardless of how the claims are construed, it's possible for this court to enter judgment for Bledsoe on the basis of an obviousness determination. Gen 2's prior art unloaded brace includes every element of all the asserted claims except the adjustable joint that was admitted by the inventor at trial. The unloaded brace also was covered by another Gen 2 patent, the 698 patent. During reexamination of the 169 patent, Gen 2 sought to add the term substantially rigid into the claims to distinguish over some prior art. In order to establish that that addition didn't constitute new matter, the inventor admitted that the arms of the device disclosed in the 698 and the arms of the devices of the invention of the 169 are substantially identical and both substantially rigid. Let me ask you about the obviousness. You're asserting that the nature of the problem to be solved makes the invention obvious. Yes. My question is, isn't it true that coming up with the idea of providing a knee brace with adjustable arms, that could be non-obvious? Even though once you've established what the problem you want to be solved is, then finding the prior art that fits in that is obvious? It could be, Your Honor, if there weren't prior art that was right on the money. But the prior art didn't define the nature of the problem to be solved with this invention, right? Well, what Dr. Kiveny, their expert admitted at trial, was that that Grabowski reference teaches an adjustable joint means having exactly the same mechanical interactions that disclosed in the patent suit. And when Gen 2 tried to re-examine that back... The prior art doesn't have a knee brace with adjustable arms, right? I believe that the Greisinger... I'm not sure why you say, first of all, that Grabowski is not a knee brace and why Greisinger isn't a knee brace. If the district court had a translation of the Greisinger reference, they would have seen that it expressly discloses a joint at the level of the knee for dealing with problems of stiff knee. It was characterized at the district court level as a splint. But the translation was not before the patent office and not introduced at the trial. Okay. We must move on. Is that all right? Okay. Thank you both. We must move on. We've exhausted your time. Mr. Culligan, Mr. Mathiowicz.